# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

MICHAEL SPIESSBACH,
an individual,

      Plaintiff,

v.                                                                                    CASE NO.

AMOL NIRGUDKAR, an individual,
PATIENT PRISM, LLC,
a Florida limited liability company, and
PATIENT PRISM HOLDINGS, LLC
a Delaware limited liability company,

      Defendants.

_____/

## NOTICE OF REMOVAL

Defendants Amol Nirgudkar ("Nirgudkar"), Patient Prism, LLC ("Patient Prism"), and Patient Prism Holdings, LLC ("Patient Prism Holdings") (collectively, "Defendants") hereby remove this action from the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida to the United States District Court for the Middle District of Florida, Tampa Division based on federal question jurisdiction under 28 U.S.C. §§ 1331, 1441(a), and 1446(b). This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) as to any claims sounding in state law because they form the same controversy and depend upon the determination of related facts forming the basis for federal question jurisdiction.

1

## I.    BACKGROUND

On March 18, 2026, Plaintiff Michael Spiessbach ("Spiessbach") commenced this civil action in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida by filing a Complaint captioned *Michael Spiessbach v. Amol Nirgudkar, an individual, Patient Prism, LLC, a Florida limited liability company, and Patient Prism Holdings, LLC, a Delaware limited liability company*, Case No. 26-CA-003069, attached as **"Exhibit A."**

## II.    REMOVAL IS TIMELY

Defendants were served on April 10, 2026.[1] Accordingly, removal is timely. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (holding removal as timely when filed no later than 30 days after formal service of the complaint).

## III.    FEDERAL QUESTION JURISDICTION EXISTS

This Court has original jurisdiction under 28 U.S.C. § 1331 and Defendants are entitled to remove to this Court pursuant to 28 U.S.C. § 1441(a) because Count V, a claim for conversion of intangible property, disputes Nirgudkar's inventorship rights and, subsequently, Nirgudkar's ability to assign patent ownership to Patient Prism. The former must be resolved under federal law, and the latter may only be resolved once inventorship is addressed.

---

[1] Pursuant to 28 U.S.C. § 1446(a) and M.D. Fla. L.R. 1.06(b), copies of all process, pleadings, and orders served upon the Defendants are attached collectively as **"Exhibit B."**

### A.      The U.S. Patent and Trademark Office Issues Patents to Inventors or Persons Authorized by Inventors

"The United States Constitution empowers Congress to enact laws relating to patents in order to 'promote the Progress of . . . useful Arts.'" *Solar Dynamics, Inc. v. Buchanan Ingersoll & Rooney, P.C.*, 211 So. 3d 294, 297 (Fla. 2d DCA 2017) (quoting Art. I, § 8, cl. 8, U.S. Const.). "A primary purpose of patent law is to reward invent[orship]." *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999). Patent law supports this purpose by requiring patent applications to "identify[] the actual inventors of an invention eligible for patent protection." *Id.*

Accordingly, a patent application must be made in the names of the actual inventors, or someone authorized by the inventors, and the patent, when approved, is issued in the names of such persons. *See* 35 U.S.C. § 111(a)(1) ("An application for patent shall be made, or authorized to be made, by the inventor . . . ."); 35 U.S.C. § 116(a) ("When an invention is made by two or more persons jointly, they shall apply for patent jointly . . . .").

### B.      Ownership Is Distinct from Inventorship and Is Assignable

Patents and patent applications are considered personal property, and their ownership is the subject of state law. *Gulbrandsen v. Gulbrandsen*, 22 So. 3d 640, 644 (Fla. 3d DCA 2009) ("[A] patent is personal property . . . [w]e see no reason to apply a different analysis to a patent application . . . ."). Ownership rights of patents and patent applications are assignable by an inventor in an instrument in writing. *S. Lead Corp. v. Glass*, 103 Fla. 657, 659 (Fla. 1931) ("It is well settled that an inventor has

3

before the issuance or the allowance of a patent an inchoate right of property in his invention . . . which he may assign . . . ."); *see also* 35 U.S.C. § 261 ("The Patent and Trademark Office shall maintain a register of interests in patents and applications for patents and shall record any document related thereto . . . . Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing.").

"[I]n the context of joint inventorship, each co-inventor presumptively owns a pro rata undivided interest in the entire patent, no matter what their respective contributions." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1465 (Fed. Cir. 1998). "Thus, a joint inventor as to even one claim enjoys a presumption of ownership in the entire patent[,]" and, therefore, may assign their ownership interests. *Id.* at 1466; *see also S. Lead Corp.*, 103 Fla. at 659.

### C. Speissbach's Ownership Challenges Are Based on Inventorship, and Only a Federal Court Has Subject Matter Jurisdiction to Resolve Such Claims

Spiessbach challenges the status of Nirgudkar, as co-inventor, and Patient Prism, as assignee because, according to Spiessbach, Nirgudkar assigned the patent to Patient Prism "without any valid written assignment or authorization from Spiessbach." Compl. ¶ 89. Spiessbach alleges that he "never consented to or executed any written assignment transferring rights of inventorship or ownership in the Patents to Patient Prism or Nirgudkar." *Id.* at ¶ 92; *see also id.* at ¶ 42 ("Critically, Spiessbach has never knowingly executed any valid written assignment transferring his intellectual

property rights to Nirgudkar or any Patient Prism entity, whether by invention assignment, contribution agreement, work-for-hire acknowledgement, or otherwise.").

Spiessbach's co-inventorship claims cannot be raised in the state court. Federal law leaves "no room for states to supplement the national standard for inventorship." *Univ. of Colo. Found.*, 196 F.3d at 1372. Therefore, federal law forecloses any role for state law to play in defining who is an inventor. *HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co., Ltd.*, 600 F.3d 1347, 1353 (Fed. Cir. 2010), *as amended on reh'g in part* (June 14, 2010) ("[T]he field of federal patent law preempts any state law that purports to define rights based on inventorship.") (quoting *Univ. of Colo. Found.*, 196 F.3d at 1372)); *see also, Krauser v. BioHorizons, Inc.*, 903 F. Supp. 2d 1337, 1348 (S.D. Fla. 2012), *aff'd*, 622 Fed. Appx. 890 (11th Cir. 2015) ("The use of state law to determine 'inventorship' is barred under the doctrine of [federal] preemption.").

Simply put, state courts lack subject matter jurisdiction to correct or adjudicate matters of inventorship. *See Univ. of Colo. Found.*, 196 F.3d at 1372 ("[F]ederal law has provided [federal] court[s] with jurisdiction to enforce . . . comprehensive provisions to provide a uniform national standard for inventorship."). This preemption encompasses patents that have been issued. *See HIF Bio.*, 600 F.3d at 1354 (explaining that once a patent issues there is a private right to inventorship under 35 U.S.C. § 256 which supplies a valid basis for federal jurisdiction).

Inventorship challenges regarding issued patents may be brought only in federal court because 35 U.S.C. § 256 specifically "provides a private right of action to challenge inventorship, and such challenge arises under § 1338(a)." *Id.* Section 1338

sets out the exclusive jurisdiction of federal courts relating to patents. Under section 1338(a), the federal "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents," and "[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents . . . ." 28 U.S.C. § 1338(a). Consequently, the federal courts have exclusive jurisdiction to address inventorship challenges.

Florida law is in accord with federal interpretations. In *Solar Dynamics*, Florida's Second District Court of Appeal quoted *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988), for the principle that § 1338(a) jurisdiction "inures when a complaint establishes that 'federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.'" *Solar Dynamics*, 211 So. 3d at 300 (quoting *Christianson*, 486 U.S. at 808–09); *see also id.* at 300 ("[I]f the suit is founded on a breach of a right created by the patent laws, even if that right is confirmed by separate agreement, the case arises under the patent laws, and a state court is without subject matter jurisdiction.") (quoting *Schachel v. Closet Concepts*, Inc., 405 So. 2d 487–88 (Fla. 3d DCA 1981)).

*Solar Dynamics* also recognized the four-part test that the United States Supreme Court utilized in *Gunn v. Minton*, 568 U.S. 251 (2013), and *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), to determine when a federal court has jurisdiction under § 1338(a) over a state law claim involving patent law. *Id.* at 297–98. Under that test, "federal jurisdiction over such a state law claim

will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 298 (citing *Grable*, 545 U.S. at 314). Discussing the third and fourth elements of the *Gunn* test, the Second District held that "core concepts of patent law" present substantial issues and that "[r]esting the resolution of core patent issues in a state court disrupts the balance between state and federal courts anticipated by Congress for patent matters." *Solar Dynamics*, 211 So. 3d at 299, 301.

Spiessbach alleges that he was "the sole inventor of five (5) utility patents (collectively, the 'Patents'), which contain proprietary systems upon which the Patient Prism Software relies." Compl. ¶ 40. He does not attach the patents as exhibits to the Complaint. Defendants attach copies of the patents at issue as "**Exhibits C – G"** to this Motion.[2] As can be seen, each of the attached patents lists *both* Spiessbach and Nirgudkar as co-inventors. Therefore, Spiessbach's claims boil down to a two-step inquiry: (1) whether Nirgudkar should have been listed as a co-inventor on the patents and, only once this question is answered, (2) whether Nirgudkar's assignment of ownership in the Patents to Patient Prism was proper.

Spiessbach's assertion that "[he] never consented to or executed any written assignment transferring rights of inventorship or ownership in the Patents to Patient Prism and Nirgudkar" combines two distinct inquiries, one of which (i.e., the

---

[2] *See Bush v. J.P. Morgan Chase Bank, N.A.*, 2016 WL 324993, at *2 n.2 (N.D. Ala. Jan. 27, 2016) (court could consider copies of a note and mortgage not attached to the complaint but attached to the notice of removal because they were referenced in the complaint).

inventorship issue) must be decided exclusively in a federal forum under federal law. *See* Compl. ¶ 92. Inventorship itself may not be transferred, as it is a fixed title. *See Krauser*, 903 F. Supp. 2d at 1348 ("The concept of inventorship addresses *who invented* the subject matter claimed in the patent whereas the concept of ownership addresses *who owns legal title* to the subject matter claimed a patent.") (emphases added). Therefore, a federal court must first determine whether Nirgudkar was properly listed as an inventor. Only after inventorship is established under federal law may the assignment of ownership be addressed under state law, which this Court has pendent (or supplemental) jurisdiction to do.

Furthermore, under the *Gunn* test, Spiessbach has "necessarily raised" the issue of inventorship and "actually disputed" that Nirgudkar is the inventor of certain patents. Compl. ¶ 40 ("Speissbach was the sole inventor of five (5) utility patents . . . which contain proprietary systems upon which the Patient Prism Software relies."). Inventorship is a core patent issue. "Because inventorship is indisputably a question of federal patent law," any state law cause of action that requires a court to determine a disputed issue of inventorship for an issued patent necessarily arises under patent law and, therefore, is a claim within the federal courts' exclusive jurisdiction under § 1338(a). *See HIF Bio*, 600 F.3d at 1355 (holding that slander of title claim involved disputed matters of inventorship and therefore was exclusively a matter of federal court jurisdiction).

Accordingly, Count V is removable to this Court because it necessarily raises issues of inventorship, which is within the federal courts' exclusive jurisdiction to decide.

## IV.    SUPPLEMENTAL JURSIDICTION

Pursuant to 28 U.S.C. § 1367(a), a district court that has original jurisdiction in a civil action "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In deciding whether a state law claim is part of the same case or controversy, courts will consider whether the claim "involve[s] the same witnesses, presentation of the same evidence, and determination of the same, or very similar, facts." *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1563–63 (11th Cir. 1994).

The Court has supplemental jurisdiction over Counts I–IV and VI–IX because the central underpinning allegations of the Complaint, which pervades all Counts, are that Defendants improperly transferred ownership in several patents, which, as discussed earlier, turns on the issue of inventorship. Indeed, Counts I–IV and VI–IX incorporate by reference allegations that are dependent on the resolution of whether Nirgudkar was properly listed as a co-inventor on the patents at issue, incorporate by reference the disputed inventor issues as part of the basis for the claim, or seek information concerning the use and value of the patents as part of Defendants' business and the value of Spiessbach's equity interest. Compl. ¶ 57 (seeking relief relating to intellectual property rights and validity of assignments of patents); Compl. ¶ 69

(seeking damages from allegedly improper transfer of intellectual property rights and representations regarding inventorship of the patents); Compl., Exh. C at 3 (raising inventorship as a basis for records request); Compl. Exh. C at 5 f and h (requesting records showing property of Patient Prism and relating to valuation and intellectual property); Compl. ¶ 83 (alleging Patient Prism DE "usurp[ed]" business of Patent Prism, which necessarily includes the patents and issues of inventorship); Compl. ¶¶ 98–103 (expressly basing claim on patents, inventorship, and assignments); Compl. at 18 (seeking as relief a constructive trust over revenues earned through using intellectual property, i.e., the patents, which necessarily turns on the issue of inventorship); Compl. ¶¶ 113, 116 (allegations about potential buyouts, which would necessarily involve the value of the patents and whether the assignments were valid, which in turns on issues of inventorship); Compl. ¶¶ 56, 66, 72, 78, 97, 106, 112, 115 (allegations incorporating general allegations, including those related to inventorship, i.e., paragraphs 12–14, 20–26, 40–42). Because the claims arise from the same case or controversy, supplemental jurisdiction exists.

## V.    REMOVAL IS OTHERWISE PROPER

As required by 28 U.S.C. § 1446(d), written notice of this Notice of Removal is being served upon counsel for Plaintiff, and Defendants are filing a copy of this Notice of Removal with the Clerk of Court for the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.

Venue is proper in the Midde District of Florida, Tampa Division under 28 U.S.C. § 1441(a) because this Court embraces Hillsborough County.

10

**WHEREFORE**, Amol Nirgudkar, Patient Prism, LLC, and Patient Prism Holdings, LLC remove this action from the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida to the United States District Court for the Middle District of Florida.

Dated: May 4, 2026

Respectfully submitted,

*/s/ Kevin P. McCoy*
Kevin P. McCoy (Lead Counsel)
Florida Bar No. 471860
David R. Wright
Florida Bar No. 119453
CARLTON FIELDS, P.A.
4221 W. Boy Scout Blvd., Ste. 1000
Tampa, Florida 33607
Phone: (813) 223-7000
Fax: (813) 229-4133
kmccoy@carltonfields.com
dwright@carltonfields.com

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2026, a true and correct copy of the foregoing

Notice of Removal was served by electronic mail and U.S. Mail, First-Class postage

prepaid, on the following counsel of record:

John A. Anthony
Charles D. Preston
Anthony & Partners, PLLC
100 S. Ashley Drive, Suite 1600
Tampa, Florida 33602
Tel: (813) 273-5616
Fax: (813) 221-4113
janthony@anthonyandpartners.com
cpreston@anthonyandpartners.com

/s/ Kevin P. McCoy
Kevin P. McCoy

12